IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STATE OF NEW YORK, by, :
Attorney General Eric T. Schneiderman, :
:
    Plaintiff, :
:
v. : Civ. No. 09-827-LPS
:
INTEL CORPORATION, :
:
    Defendant. :
_____ :

Richard L. Schwartz, Esquire, Emily Granrud, Esquire, Jeremy R. Kasha, Esquire, James Yoon, Esquire and Saami Zain, Esquire, OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK, New York, NY.

    Attorneys for Plaintiff.


Robert A. Van Nest, Esquire, Paula L. Blizzard, Esquire and Brook Dooley, Esquire of KEKER & VAN NEST, San Francisco, CA.

Donn P. Pickett, Esquire and Frank M. Hinman, Esquire of BINGHAM MCCUTCHEN LLP, San Francisco, CA.

Daniel S. Floyd, Esquire of GIBSON, DUNN & CRUTCHER LLP, Los Angeles, CA.

Joseph Kattan, PC, of GIBSON, DUNN & CRUTCHER LLP, Washington, DC.

Richard L. Horwitz, Esquire and W. Harding Drane, Jr., Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE.

    Attorneys for Defendant.

---

**MEMORANDUM OPINION**


December 7, 2011
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

Pending before the Court is the Motion under Rule 12(c) for dismissal of New York's Donnelly Act Damages Claim on Behalf of Consumers (Docket Item ("D.I.") 161 and, hereinafter, the "Donnelly Consumer Motion") filed by defendant Intel Corporation ("Intel" or "Defendant"). For the reasons discussed below, the Court will grant the motion.

## I. BACKGROUND

Plaintiff, the State of New York ("Plaintiff" or "New York"), filed the complaint ("Complaint") in this action on November 4, 2009 against Intel. (D.I. 1) The Complaint alleges:

> Intel has engaged in a systematic worldwide campaign of illegal, exclusionary conduct to maintain its monopoly power and prices in the market for x86 microprocessors, the "brains" of Personal Computers ("PCs"). By exacting exclusive or near-exclusive agreements from large computer makers ("Original Equipment Manufacturers" or "OEMs") in exchange for payments totaling billions of dollars, and threatening retaliation against any company that did not heed its wishes, Intel robbed its competitors of the opportunity to challenge Intel's dominance in key segments of the market. This illegal behavior was highly detrimental to consumers, competition, and innovation.

(*Id.* ¶ 1; *see also id.* ¶¶ 2-9, 252 (discussing, *inter alia*, Intel's alleged behavior and consumer harm, including "depriv[ing] New York consumers . . . of innovative technology and compell[ing] them to pay prices above competitive levels")) Plaintiff asserts violations of Section 2 of the federal Sherman Act, 15 U.S.C. § 2 (Claim One), and two state statutes – (1) New York's antitrust law (the "Donnelly Act"), N.Y. Gen. Bus. Law § 340 *et seq.* (Claim Two), and (2) Section 63(12) of New York's Executive Law, N.Y. Exec. Law § 63(12) (the "Executive Law"), a statute permitting New York's Attorney General to seek relief with respect to certain "repeated fraudulent or illegal acts" (Claims Three and Four). (*See* D.I. 1)

1

As to its state-based Donnelly Act claims, Plaintiff, as *parens patriae*, seeks redress on behalf of New York consumers-at-large, specifically natural persons and governmental entities.[1] Of particular relevance here is Claim Two of the Complaint, whereby Plaintiff, under color of New York law, "as the duly constituted officer authorized to represent . . . consumers" and "sue[] on behalf of . . . New York consumers who purchased x86 CPUs or x86 CPU-containing products directly or indirectly from [Intel]," seeks to recover, under the Donnelly Act, "treble damages on behalf of all New York consumers who suffered directly or indirectly as a result of Intel's illegal conduct." (D.I. 1 ¶¶ 14, 263, Prayer for Relief; *see also* D.I. 162 at 1 & n.1)

Intel answered the Complaint on January 5, 2010. (D.I. 14) On May 27, 2011, Intel filed its Donnelly Consumer Motion, seeking dismissal of Plaintiff's Donnelly Act treble damages claim on behalf of individual New York consumers. (D.I. 161) By its motion, Intel submits that New York is simply vested with the power to assert this treble damages claim on behalf of consumers, as such a claim is rooted in neither statutory nor common law. (*See* D.I. 162 at 1; D.I. 220 at 1) Intel contends the Donnelly Act does not bestow authority upon New York to sue for damages on behalf of consumers; rather, the Act confines New York, when filing suit on behalf of its citizens, to requests for penalties and injunctive relief. (*See* D.I. 162 at 1, 3-4; D.I. 220 at 1; Tr. at 16-18) Moreover, Intel continues, New York cannot ground its request for relief under the cloak of other statutory authority, or on a *parens patriae* theory, "because a sovereign has no *parens patriae* right to recover damages on behalf of particular individuals for harm done to those individuals." (D.I. 162 at 1; *see also id.* at 4-9; D.I. 220)

---

[1] New York sought to amend its Complaint on December 9, 2010 to amend the term "consumers" to include not only natural persons and governmental entities but also small and medium businesses. (*See* D.I. 87) That request was denied. (*See* D.I. 154)

2

After briefing on the motion was completed, the Court heard argument on October 27, 2011 (*see* Transcript of October 27, 2011 hearing (D.I. 247) (hereinafter "Tr.")).

## II. LEGAL STANDARDS

### A. Motion to Dismiss - Fed. R. Civ. P. 12(c)

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), alleging a failure to state a claim upon which relief can be granted, is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

### B. Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action "for failure to state a claim upon which relief can be granted." "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal citation and quotation marks omitted). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A plaintiff is required, by Fed. R. Civ. P. 8(a)(2), to provide the "grounds of his entitle[ment] to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal

quotation marks omitted).

The Third Circuit has explained:

> In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. A document forms the basis of a claim if the document is integral to or explicitly relied upon in the complaint. The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document. Further, considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered.

*Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (internal citations and quotation marks omitted) (abrogated in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. DISCUSSION

Intel filed its Donnelly Consumer Motion seeking dismissal of New York's Donnelly Act treble damages claim on behalf of consumers. (D.I. 161) Intel highlights the language of the Donnelly Act, which, it contends, limits the State to bringing on behalf of "the people" only claims for penalties or injunctive relief. (D.I. 162 at 3) The statute provides:

> The attorney-general may bring an action in the name and in behalf of the people of the state against any person, trustee, director, manager or other officer or agent of a corporation, or against a corporation, foreign or domestic, ***to restrain and prevent the doing in this state of any act*** herein declared to be illegal, or any act in, toward or for the making or consummation of any contract, agreement, arrangement or combination herein prohibited, wherever the same may have been made. In such an action, the court may award to the plaintiff ***a sum not in excess of twenty thousand dollars as an additional allowance***.

4

N.Y. Gen. Bus. Law § 342 (emphasis added). Another provision of the statute states:

> In lieu of any penalty otherwise prescribed for a violation of a provision of this article and in addition to an action pursuant to section three hundred forty-two of this article, the attorney-general may bring an action in the name and in behalf of the people of the state against any person, trustee, director, manager or other officer or agent of a corporation, or against a corporation, foreign or domestic, ***to recover a penalty in the sum specified in section three hundred forty-one*** of this article for the doing in this state of any act herein declared to be illegal, or any act in, toward or for the making or consummation of any contract, agreement, arrangement or combination herein prohibited, wherever the same may have been made. The action must be brought within three years after the commission of the act upon which it is based.

N.Y. Gen. Bus. Law § 342-a (emphasis added). Finally, N.Y. Gen. Bus. Law § 342-b provides:

> In addition to existing statutory authority to bring such actions on behalf of the state and public authorities, the attorney general may also bring action on behalf of any political subdivision or public authority of the state upon the request of such political subdivision or public authority ***to recover damages for violations of section three hundred forty of this article, or to recover damages provided for by federal law for violations of the federal antitrust laws***. In any class action the attorney general may bring on behalf of these or other subordinate governmental entities, any governmental entity that does not affirmatively exclude itself from the action, upon due notice thereof, shall be deemed to have requested to be treated as a member of the class represented in that action. The attorney general, on behalf of the state of New York, shall be entitled to retain from any moneys recovered in such actions the costs and expenses of such services.

(Emphasis added).

Based on these statutory provisions, Intel contends:

> the Donnelly Act does not authorize New York to bring a damages claim for harm done to private parties. . . . Notably, the Donnelly Act specifically permits New York to seek damages for harms that "the state" itself has sustained (and also permits non-state public entities and consumers to seek damages for harms they sustained

5

> themselves). *See* N.Y. Gen. Bus. Law § 340(5). The Donnelly Act further allows New York to bring suit for damages on behalf of harms suffered by non-state public entities, but only "upon the request[s]" of such entities. . . . The Donnelly Act includes no similar provision authorizing New York to sue for damages on behalf of consumers.

(D.I. 162 at 3; *see also* Tr. at 16-18)

Courts considering the issue before the Court have agreed with Intel's reading of the Donnelly Act. For instance, in *In re Dynamic Random Access Memory Antitrust Litig. (In re DRAM)*, the Northern District of California held:

> [T]he [Donnelly] Act itself does not authorize the [New York] Attorney General to pursue damages claims on behalf of natural persons. To be sure, the Act does contemplate that the Attorney General may file claims "in behalf of the people of the state . . ." *See* N.Y. Gen. Bus. Law § 342. However, the Act specifically limits such claims to those seeking injunctive relief, or civil penalties under the Act. *See id.* at § 342-a. By contrast, the separate provision of the Act that expressly governs the Attorney General's ability to pursue damages claims under the Act, unambiguously limits such actions to those "on behalf of any political subdivision or public authority of the state." *See id.* at § 342-b. Presumably, the legislature knew how to include language granting the Attorney General the right to sue "in behalf of the people of the state" in the Act's damages relief provision, as it did so with respect to the provisions allowing actions for injunctive relief and civil penalties. Accordingly, the court concludes that the legislature's failure to include similar language in the provision authorizing damages suits was deliberate. As such, plaintiff may not assert a claim for monetary damages under the Act on behalf of natural persons.

2007 WL 2517851, *8 (N.D. Cal. Aug. 31, 2007); *see also New York v. Feldman*, 210 F. Supp. 2d 294, 303 n.4 (S.D.N.Y. 2002) ("The [Donnelly] Act does not authorize [New York] to recover damages on behalf of the people."); *see also People v. Gold Medal Farms, Inc.*, 113 Misc. 2d 574, 578 (N.Y. Sup. Ct. 1982) (examining text of Donnelly Act to determine state's statutorily

mandated authority). The Court is persuaded that no express statutory authority permits New York to bring treble damages claims on behalf of individuals under the Donnelly Act.

New York seeks to distinguish *In re DRAM* based on the fact it predates more recent state-law authority, particularly *New York v. Liberty Mutual Ins. Co.*, 861 N.Y.S.2d 294 (1st Dept. 2009). Yet federal courts have adhered to *In re DRAM* even after having the benefit of New York's subsequent authority. In *In re TFT-LCD (Flat Panel) Antitrust Litig.*, the Northern District of California adopted *In re DRAM's* conclusion and reasoning. *See* 2011 WL 3475408, at *4-6 (N.D. Cal. Aug. 9, 2011). Indeed, the *TFT-LCD* court explicitly rejected New York's reliance on *Liberty Mutual*, explaining that *Liberty Mutual's* treatment of the issue is "exceedingly brief" and "does not discuss what relief would be available" in a *parens patriae* damages suit on behalf of individuals. 2011 WL 3475408, at *6.[2]

New York insists that New York courts have allowed *parens patriae* treble damages actions under the Donnelly Act. (*See* D.I. 213 at 1, 7-10) Intel responds that New York failed to invoke the *parens patriae* theory in its Donnelly Act claim. Intel further contends that "New York's suit for treble damages on behalf of consumers in connection with individual computer purchases is the prototypical example of a claim brought to vindicate private interests and therefore cannot be maintained under New York's common-law *parens patriae* authority." (D.I. 162 at 4 n.3, 5; *see also In re Dram*, 2007 WL 2517851, at *8-9 (rejecting notion that subject suit

---

[2]Subsequent to the Court's hearing on Intel's Donnelly Consumer Motion, the parties apprised the Court that the *TFT-LCD* court denied New York's motion to reconsider the holding regarding the State's *parens patriae* damages claim. (*See* D.I. 255; D.I. 256) In reaffirming its original decision, the Northern District of California emphasized that "the New York legislature has 'unambiguously' restricted the state's ability to seek such damages to actions 'on behalf of any political subdivision or public authority of the state.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 5573930, at *1 (N.D. Cal. Nov 16, 2011).

could be premised on state's general common law powers when there "is no broadly recognized common law *parens patriae* right to pursue monetary damages claims, and cases discussing the common law *parens patriae* right have generally been limited to cases seeking injunctive or other equitable relief")) Intel further submits that a *parens patriae* claim can only be brought on behalf of the State as a whole to protect a "quasi-sovereign interest," and cannot be asserted to vindicate the "interests of particular private parties." (D.I. 162 at 4; *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982))

In support of its position, Intel cites a decision of the Court of Appeals of New York adopting *Snapp's* "quasi-sovereign interest" standard for measuring New York's common-law *parens patriae* authority. (*See* D.I. 162 at 4; *People v. Grasso*, 11 N.Y.3d 64, 69 n.4 (2008) ("*Parens patriae* is a common-law standing doctrine that permits the state to commence an action to protect a public interest, like the safety, health or welfare of its citizens. To invoke the doctrine, the Attorney General must prove a quasi-sovereign interest distinct from that of a particular party and injury to a substantial segment of the state's population."); *see also New York ex rel. Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) (denying New York's assertion of standing to sue in representative capacity on behalf of individuals under *parens patriae* theory to recover treble damages, explaining "[a] State that sues as *parens patriae* must seek to redress an injury to an interest that is separate from the interests of particular individuals"); *id.* ("Where the complaint only seeks to recover money damages for injuries suffered by individuals, the award of money damages will not compensate the state for any harm done to its quasi-sovereign interests. Thus, the state as *parens patriae* lacks standing to prosecute such a suit.")).

New York responds that the New York Attorney General is permitted to recover its state

8

law Donnelly Act damages for injury to consumers because New York has a "quasi-sovereign interest in maintaining a competitive marketplace." (D.I. 213 at 3) Specifically, Plaintiff insists it meets the three-prong test of *Grasso*. (*See id.* at 1-2) As New York summarizes: "'[T]he three factors that normally determine whether a quasi-sovereign interest is sufficiently important to permit standing are (1) the size of the segment of the population that has been adversely affected, (2) the magnitude of the harm inflicted, and (3) the practical ability of those injured to obtain complete relief without intervention by the sovereign.' 72 Am. Jur. 2d States, Etc. § 91 (2011)." (D.I. 213 at 4) Here, New York contends its claim vindicates a quasi-sovereign interest since computers can be found in nearly every home, so virtually all New Yorkers are affected by the claim; the magnitude of harm is large in terms of dollar amount and populace affected, and competition and innovation are risked; and, it would be impractical for individuals to seek relief without sovereign intervention. (*See id.* at 4)

In *Grasso*, the Court observed: "In varying contexts, courts have held that a state has a quasi-sovereign interest in protecting the integrity of the marketplace." 11 N.Y.3d at 69 n.4. Here, however, the Court agrees with Intel that New York is suing to recover treble damages on behalf of certain New York consumers, in order to recover overcharges those consumers allegedly paid while purchasing computers containing microprocessors, and this ground for relief seeks to vindicate particular private interests. (D.I. 162 at 6-9)

Finally, New York offers that, "[i]ndependent of its common law authority, New York may also bring its Donnelly Act claim on behalf of consumers by virtue of separate statutes."

(D.I. 213 at 10; *see also* Tr. at 50) In particular, New York cites Executive Law Section 63(1)[3] as authorizing the Attorney General to "[p]rosecute and defend all actions and proceedings in which the State is interested." (D.I. 213 at 10) Additionally, New York cites to Executive Law Section 63(12)[4] as authorizing the Attorney General to sue "in the name of the people of the State of New

---

[3]NY Exec. Law § 63(1) provides:

> The attorney-general shall:
>
> > Prosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel, in order to protect the interest of the state, but this section shall not apply to any of the military department bureaus or military offices of the state. No action or proceeding affecting the property or interests of the state shall be instituted, defended or conducted by any department, bureau, board, council, officer, agency or instrumentality of the state, without a notice to the attorney-general apprising him of the said action or proceeding, the nature and purpose thereof, so that he may participate or join therein if in his opinion the interests of the state so warrant.

[4]NY Exec. Law § 63(12) provides:

> Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the former penal law or section one hundred thirty of the general business law, and the court may award the relief applied for or so

York" when any person shall "[e]ngage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting, or transaction of business." (*Id.* at 10-11) New York submits that courts have determined that these two statutory provisions constitute "express state statutory authority [allowing the Attorney General] to represent consumers in a capacity that is the functional equivalent of *parens patriae* authority." (*Id.* at 11)

However, the Executive Law permits New York to recover *compensatory* damages for harms to individuals arising from repeated violations of the Donnelly Act. (*See* Tr. at 16) (counsel for Intel stating, "I think everyone is mindful that there is authority with the Executive Law, Section 63[(12)], that they can bring single compensatory damage, Donnelly Act-type claims but not the treble damages under 342-b.") It does not permit New York to bring *treble* damages claims on behalf of consumers.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Intel's Donnelly Consumer Motion. A separate Order, consistent with this Memorandum Opinion, will be entered.

---

much thereof as it may deem proper. The word "fraud" or "fraudulent" as used herein shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions. The term "persistent fraud" or "illegality" as used herein shall include continuance or carrying on of any fraudulent or illegal act or conduct. The term "repeated" as used herein shall include repetition of any separate and distinct fraudulent or illegal act, or conduct which affects more than one person.