IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STATE OF NEW YORK, by,  :
Attorney General Eric T. Schneiderman,  :
                                        :
      Plaintiff,                        :
                                        :
v.                                      : Civ. No. 09-827-LPS
                                        :
INTEL CORPORATION,                      :
                                        :
      Defendant.                        :
_____:

Richard L. Schwartz, Esquire, Emily Granrud, Esquire, Jeremy R. Kasha, Esquire, James Yoon, Esquire and Saami Zain, Esquire, OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK, New York, NY.

      Attorneys for Plaintiff.


Robert A. Van Nest, Esquire, Paula L. Blizzard, Esquire and Brook Dooley, Esquire of KEKER & VAN NEST, San Francisco, CA.

Donn P. Pickett, Esquire and Frank M. Hinman, Esquire of BINGHAM MCCUTCHEN LLP, San Francisco, CA.

Daniel S. Floyd, Esquire of GIBSON, DUNN & CRUTCHER LLP, Los Angeles, CA.

Joseph Kattan, PC, of GIBSON, DUNN & CRUTCHER LLP, Washington, DC.

Richard L. Horwitz, Esquire and W. Harding Drane, Jr., Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE.

      Attorneys for Defendant.

---

**MEMORANDUM OPINION**

December 7, 2011
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is the Motion under Rule 17(a), Rule 12(b)(1), Rule 12(b)(6), and Rule 12(c) for Dismissal of New York's Claims on Behalf of Non-State Public Entities (Docket Item ("D.I.") 163 and, hereinafter, the "Donnelly Non-State Public Entities Motion") filed by defendant Intel Corporation ("Intel" or "Defendant"). For the reasons discussed below, the Court will grant the motion.

I.  **BACKGROUND**

Plaintiff, the State of New York ("Plaintiff" or "New York"), filed the complaint ("Complaint") in this action on November 4, 2009 against Intel. (D.I. 1) In its Complaint, Plaintiff asserts violations under Section 2 of the federal Sherman Act, 15 U.S.C. § 2 (Claim One), and under two state statutes – (1) New York's antitrust law (the "Donnelly Act"), N.Y. Gen. Bus. Law § 340 *et seq.* (Claim Two), and (2) Section 63(12) of New York's Executive Law, N.Y. Exec. Law § 63(12) (the "Executive Law") (Claims Three and Four). (*See id.*)

Relevant here is Claim Two of the Complaint, whereby New York, as "the duly constituted officer authorized to represent" and "sue[] on behalf of . . . non-State public entities,"[1] attempts to proceed on behalf of non-State public entities that purchased computers containing Intel microprocessors. By Count Two, New York, seeks to recover "treble damages, based on the injury suffered directly or indirectly by the State of New York, its agencies,

---

[1] According to Intel, these non-State public entities "include unspecified New York political subdivisions, local entities, and public authorities." (D.I. 164 at 2) New York has clarified that its Complaint is filed "on behalf of over 4,000 entities – the vast majority being non-state public entities." (D.I. 214 at 13) Further, "[i]n its June 10, 2010 corrected Initial Disclosures, New York identified approximately 4,593 public entities," a number which would later be reduced by virtue of 47 entities "opt[ing] out of the litigation." (*Id.* at 7 n.3)

1

departments and local entities . . . as a result of Intel's illegal conduct." (*Id.* ¶¶ 14, 262; *see also* D.I. 164 at 2; D.I. 162 at 1 n.1) New York alleges that Intel's allegedly anticompetitive conduct caused the public entities to "pay prices above competitive levels" for computers. (D.I. 1 ¶ 252; *see also id.* ¶ 253) Intel answered the Complaint on January 5, 2010. (D.I. 14)

On May 27, 2011, Intel filed its Donnelly Non-State Public Entities Motion, seeking dismissal of Plaintiff's treble damages claim on behalf of New York non-state local entities. (D.I. 163) Intel contends that because New York is without authority to represent these public entities, "it is not the real party in interest under Federal Rule of Civil Procedure 17 and lacks both constitutional and prudential standing." (*Id.* at 1; *see also* D.I. 164 at 2, 11-14)

New York asserts that it represents various "non-State public entities" in this litigation "pursuant to statutory authority," including "Section 342-b of New York's General Business Law (Donnelly Act)." (D.I. 165, Declaration of Daniel S. Floyd, dated May 27, 2011 ("Floyd Decl.") ¶ 4, Ex. B at 1) Section 342-b of New York's General Business Law, which is entitled "Recovery of damages by attorney general," provides:

> In addition to existing statutory authority to bring such actions on behalf of the state and public authorities, the attorney general may also bring action on behalf of any political subdivision or public authority of the state upon the request of such political subdivision or public authority to recover damages for violations of section three hundred forty of this article, or to recover damages provided for by federal law for violations of the federal antitrust laws. In any class action the attorney general may bring on behalf of these or other subordinate governmental entities, any governmental entity that does not affirmatively exclude itself from the action, upon due notice thereof, shall be deemed to have requested to be treated as a member of the class represented in that action. The attorney general, on behalf of the state of New York, shall be entitled to retain from any moneys recovered in such actions the costs and expenses of such services.

Intel points out that, while the express language of this statute permits New York's Attorney General to file a suit representing a "political subdivision or public authority of the state," it does so only "***upon the request*** of such political subdivision or public authority." Here, in Intel's view, New York failed to satisfy this requirement and, instead, commenced the instant suit on behalf of non-State public entities that made no request for it to do so. (*See* D.I. 164 at 1) In support of this contention, Intel points to a May 28, 2010 interrogatory response, in which New York informed Intel that it was "in the process of communicating with each non-State public entity in order to confirm that it requests the Attorney General to represent it in this action." (D.I. 165, Floyd Decl. ¶ 6, Ex. D at 2) Intel asserts this after-the-fact attempt to obtain requests is "fatal" to New York's claim. (*See* D.I. 164 at 1, 8, 10)

Among other things, New York points to the second sentence of Section 342-b, which provides that the State can bring a class action on behalf of public entities. With respect to a class action, each entity "shall be deemed to have requested to be treated as a member of the [represented] class," ***unless*** the entity "affirmatively exclude[d] itself from the action." N.Y. Gen. Bus. Law § 342-b. In filing the instant action, however, New York chose not to file it as a class action. (*See* D.I. 164 at 1 & n.1, 2, 7; *see also* Tr. at 35-36; *see generally* D.I. 1)

New York "sent initial litigation advisories to all represented entities on either November 30, 2009 or December 22, 2009, with the exception of those entities for which contact information had to be obtained. Litigation advisories were sent to this latter group of entities on either February 12, 2010 or February 16, 2010." (D.I. 214 Ex. A, New York's Response to Intel's Interrogatory No. 18; *see also* D.I. 165, Floyd Decl., Ex. J) Also "[i]n addition to sending the advisory, New York held two informational calls on January 27, 2010, and February 2, 2010,

3

to advise the represented entities of their obligation to take reasonable steps to preserve potentially relevant documents, and to answer questions relating to the litigation and the advisory." (*Id.*) Further, "on May 25, 2010, New York sent a second notice to non-state public entities" to "once again inform[] entities of the litigation and in addition ask[] them to advise New York if they did not wish the Attorney General to represent them in the litigation." (D.I. 214 at 3; *see also* D.I. 165, Floyd Decl., Ex. K) The May 25, 2010 notice also provided:

> Please inform us by June 25, 2010 . . . if your Public Entity does NOT wish to be represented by the Attorney General in the Intel Action. Only Public Entities which do NOT wish to be represented by the Attorney General need respond. If we do not hear from you, we will assume that your Public Entity is requesting to be represented by the Attorney General in the Intel Action.

(D.I. 165, Floyd Decl., Ex. K)

Intel argues that all of this shows "that no Public Entity <u>requested</u> that New York bring this suit on its behalf;" Intel further contends "the 'shall be deemed to have requested' method is valid <u>only</u> for class actions." (D.I. 164 at 8) Intel also argues that such notice as was provided by New York to the non-State public entities "was incomplete and misleading; among other things, it did not describe the basis for New York's allegations or explain the res judicata effect of any judgment in this case, and it did not disclose New York's inherent conflict of interest in seeking to recover direct damages in its own right (as assignee of the OEMs) while also seeking to recover (on behalf of the Public Entities) indirect damages allegedly attributable to the same OEM purchases." (*Id.* at 3-4)

After briefing on the motion was completed, the Court heard argument on October 27, 2011 (*see* Transcript of October 27, 2011 hearing (D.I. 247) (hereinafter "Tr.")).

4

## II. LEGAL STANDARDS

### A. Motion to Dismiss - Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter. *See Samsung Electronics Co., Ltd. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008). Motions brought under Rule 12(b)(1) may present either facial or factual challenges to the Court's subject matter jurisdiction.

> In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the Court must accept all factual allegations in the Complaint as true, and the Court may only consider the complaint and documents referenced in or attached to the complaint. *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). [In contrast, however,] [i]n reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

*Id.*

Once the Court's subject matter jurisdiction over a complaint is challenged, Plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (internal quotation marks omitted).

5

**B.     Motion to Dismiss - Fed. R. Civ. P. 17(a)**

Under Federal Rule of Civil Procedure 17(a), "[a]n action must be prosecuted in the name of the real party in interest." "[A] real-party-in-interest objection closely resembles the defense of failure to state a claim for relief because it presupposes that plaintiff does not have the substantive right to enforce the claim being made." 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1554 (3d ed.).

**C.     Motion to Dismiss - Fed. R. Civ. P. 12(c)**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), alleging a failure to state a claim upon which relief can be granted, is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

**D.     Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action "for failure to state a claim upon which relief can be granted." "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal citation and quotation marks omitted). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949

6

(2009). A plaintiff is required, by Fed. R. Civ. P. 8(a)(2), to provide the "grounds of his entitle[ment] to relief [, which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

The Third Circuit has explained:

> In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. A document forms the basis of a claim if the document is integral to or explicitly relied upon in the complaint. The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document. Further, considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered.

*Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (internal citations and quotation marks omitted) (abrogated in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. DISCUSSION

As set forth above, Intel contends that New York's Section 342-b claim on behalf of non-State public entities must be dismissed because New York seeks to proceed on behalf of non-State public entities that did not, prior to commencement of the suit, request that New York undertake the instant action.

The language of the New York statute is unambiguous. Section 342-b permits New York's Attorney General to "bring action on behalf of any political subdivision or public authority of the state ***upon the request of*** such political subdivision or public authority to recover

7

damages." N.Y. Gen. Bus. Law § 342-b (emphasis added). Here, there was no request by non-State public entities to bring this action.

This action was filed on November 4, 2009. According to New York, the first communication with the non-State public entities was on November 30, 2009. The statute requires a "request" of some kind, meaning some affirmative step by the non-State entities. Plainly, the instant action was not brought *upon the request of* any non-State public entity.

New York asserts that Section 342-b "does not mandate that non-state entities may only request representation by an express, affirmative authorization." (D.I. 214 at 16-17) Further, "even if it did, the actions taken by New York, *e.g.*, sending informative advisories and notices, having calls to provide information and answer questions, and providing an easy method to opt out, easily demonstrate that entities requested representation." (*Id.*) New York argues that its "efforts to inform non-state entities of the litigation and provide them with an opportunity to opt out satisfies GBL §342-b, as well as traditional notions of due process and fairness – as demonstrated by the dozens of entities that in fact opted out. As such, pursuant to the plain text of the statute, the non-state public entities should be 'deemed to have requested' representation." (*Id.* at 10-11) New York attempts to persuade the Court that in this "representative action," "if any consent procedure is required, it should be nothing more than what is prescribed for class actions in the statute. Indeed, for purposes of notification, a representative action brought on behalf of 4,000 entities is more akin to a class action than to an individual action." (*Id.* at 10)

The problems with New York's position begin with the fact that the applicable statutory language provides that New York's authority to bring this action on behalf of non-State public entities is premised "upon the request" of such action by the non-State entities. New York

8

cannot rely on the class action provisions of § 342-b because the statute expressly contrasts class actions and non-class actions. The Court will not presume that New York's lawmakers intended the class action procedures to apply to non-class actions when the statute does not say so. Moreover, while New York may wish to analogize the instant action to a class action, it is not a class action.[2]

New York also argues that "apart from [Section] 342-b, New York has [additional] authority to assert claims on behalf of nonstate public entities, *e.g.,* Executive Law §§ 63(1), 63-c(1), and 63(12)." (D.I. 214 at 17) However, as Intel points out, "New York only made Executive Law claims in this case on behalf of natural persons;" "[t]hey never alleged an Executive Law claim on behalf of non-state entities." (Tr. at 25-26) Moreover, the three sections of the Executive Law New York cites have been rejected in similar circumstances by other federal courts, as none of these sections refer to governmental entities. (*Id.* at 26; *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2517851 (N.D. Cal. Aug. 31, 2007)) The Court agrees with Intel.[3]

New York asserts that, in the event the Court "determine[s] that New York must obtain express, affirmative requests from the non-public entities," the Court should be loathe to dismiss "the claims brought by New York on behalf of the non-state public entities pursuant to Rule 17 without first allowing New York time to obtain ratification of the entities." (D.I. 214 at 17) New York insists that amendment of the Complaint would be proper and cause no prejudice to Intel.

---

[2]The Court is unpersuaded by New York's contention that the legislative history indicates a legislative intent that is undermined by the Court's reading of the unambiguous statutory language. (D.I. 214 at 2, 12-13)

[3]It is not necessary to reach Intel's further contention that New York also lacks standing.

9

(*See id.* at 16-20)

Intel submits, however, that New York's failure to obtain requests before filing suiting was wholly inexcusable, so dismissal should be immediate and with prejudice. (*See* D.I. 163 at 1; D.I. 164 at 1-2, 11-14) To Intel, this result is justified in light of at least three other courts making similar rulings in similar circumstances, including several prior to the commencement of the instant action. (*See* Tr. at 22 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3475408 (N.D. Cal. Aug. 9, 2011); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2517851 (N.D. Cal. Aug. 31, 2007); *New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238 (S.D.N.Y. 1987))

The Court has reviewed these cases and agrees with Intel that dismissal with prejudice is appropriate under the circumstances. New York's failure to follow its own statutory procedures come after similar failings in similar cases. Allowing amendment now – with trial just over two months away – would threaten the trial date and prejudice Intel.[4] As Intel notes, amendment at this late date would likely require Intel to undertake additional due diligence and investigation, as well as additional expert discovery with respect to damages – all at a time when discovery has closed and case dispositive motions have been filed. (*See* Tr. at 61-62)

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant Intel's Donnelly Non-State Public Entities Motion. A separate Order, consistent with this Memorandum Opinion, will be entered.

---

[4]Given the Court's determinations, it is not necessary to reach Intel's additional argument that New York has a conflict of interest because "the state stands to win . . . if they win on the direct or the indirect [claims] but the non-state entities only gain if [New York] prevail[s] on the indirect [claims]." (Tr. at 54)

10